J-S22039-17 & J-S22040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.S.T., FATHER | |
| | No. 800 MDA 2016 |

Appeal from the Order Entered April 20, 2016
in the Court of Common Pleas of Cumberland County
Juvenile Division at No.: CP-21-DP-0000212-2014

| IN THE INTEREST OF: D.M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.T., FATHER | |
| | No. 801 MDA 2016 |

Appeal from the Order Entered April 20, 2016
in the Court of Common Pleas of Cumberland County
Juvenile Division at No.: CP-21-DP-0000211-2014

| IN THE INTEREST OF: T.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.T., BIOLOGICAL FATHER | |
| | No. 802 MDA 2016 |

Appeal from the Order Entered April 21, 2016

in the Court of Common Pleas of Cumberland County
Juvenile Division at No.: CP-21-DP-0000213-2014

| | |
|---|---|
| IN THE INTEREST OF: J.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.T., FATHER | |
| | No. 803 MDA 2016 |

Appeal from the Order Entered April 21, 2016
in the Court of Common Pleas of Cumberland County
Juvenile Division at No.: CP-21-DP-0000214-2014

| | |
|---|---|
| IN RE: ADOPTION OF: M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.T., FATHER | |
| | No. 804 MDA 2016 |

Appeal from the Order Entered April 20, 2016
in the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 23 Adoptions 2016

| | |
|---|---|
| IN RE: ADOPTION OF: D.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S.T., FATHER | |
| | No. 805 MDA 2016 |

- 2 -

Appeal from the Order Entered April 20, 2016
in the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 22 Adoptions 2016

| IN RE: ADOPTION OF: T.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: J.T., FATHER | : | |
| | : | No. 806 MDA 2016 |

Appeal from the Order Entered April 21, 2016
in the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 024-Adopt-2016

| IN RE: ADOPTION OF: J.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: J.T., BIOLOGICAL FATHER | : | |
| | : | No. 807 MDA 2016 |

Appeal from the Order Entered April 21, 2016
in the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 025-Adopt-2016

BEFORE: SHOGAN, J., MOULTON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:     **FILED JULY 14, 2017**

---

[*] Retired Senior Judge assigned to the Superior Court.

In these consolidated and related appeals,[1] J.T. (Father) appeals from the orders of the Court of Common Pleas of Cumberland County (trial court) entered April 20, 2016, and April 21, 2016, that changed the goals of his children, D.T., M.T., T.T., and J.T. (Children), to adoption, and involuntarily terminated his parental rights to the Children.[2] We affirm.

Cumberland County Children and Youth Services (CYS) received legal and physical custody of the Children by *ex parte* orders of the trial court on November 20, 2014. The trial court ratified and confirmed the orders at a shelter care hearing on November 24, 2014. CYS petitioned for the *ex parte* orders after Mother obtained a protection from abuse order against Father and left the marital home while Father remained in the home and Paternal Grandmother provided assistance with the Children. Financial issues led to a lack of heat in the home, and to Father and Paternal Grandmother being overwhelmed and unable to care properly for the Children. The trial court adjudicated the Children dependent on December 11, 2014.

Father's Family Service Plan, created on February 3, 2015, and revised on January 27, 2016, required Father to cooperate with CYS; address and

_____

[1] This Court consolidated the appeals listed at 800 MDA 2016 through 803 MDA 2016 *sua sponte* in an order entered August 10, 2016. This Court consolidated the appeals listed at 804 MDA 2016 through 807 MDA 2016 *sua sponte* in an order entered July 21, 2016. The appeals are related in that they involve the same individual and consider the same set of facts.

[2] The Children's mother J.T. (Mother) voluntarily terminated her parental rights.

improve his mental health functioning; refrain from using drugs or alcohol; improve his parenting skills; maintain contact with the children; obtain stable housing; and address his anger. Father did not complete those goals.

CYS filed its petitions to terminate Father's parental rights on March 21, 2016. The trial court entered its orders terminating Father's parental rights and changing the goals to adoption regarding M.T. and D.T. on April 20, 2016, and terminating Father's parental rights and changing the goals to adoption regarding T.T. and J.T. on April 21, 2016. Father filed his notices of appeal and concise statements of errors complained of on appeal on May 19, 2016. *See* Pa.R.A.P. 1925(b).

Father raises the following questions on appeal:

> 1. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in changing the goal for [the Children] to adoption and terminating [Father's] parental rights in that [Father] is able to provide for the [C]hildren with the essential parental care, control, and subsistence in the very near future?
>
> 2. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in changing the goal for [the Children] to adoption and terminating [Father's] parental rights in that the conditions which led to the removal or placement of the [C]hildren no longer existed or were substantially eliminated?
>
> 3. Did the [t]rial [c]ourt err in determining the best interest of the [C]hildren would be served by terminating [Father's] parental rights?
>
> 4. Did the [t]rial [c]ourt err in determining the best interests of the [C]hildren would be served by changing the goal for [the] [C]hildren to adoption, terminating parental rights and placing the [C]hildren in foster care, when Father, with whom the [C]hildren have a significant bond, have [sic] presented as a resource for the [C]hildren and Father is presently available as a

resource with potentially appropriate housing in Harrisburg, Pennsylvania?

(Father's Brief, at 6).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*,

843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, [twelve] months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing

evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The trial court concluded that termination was appropriate under § 2511(a)(8).

> With regard to Section 2511(a)(8), in order to terminate parental rights, an agency must prove by clear and convincing evidence that (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

*In re: C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc)* (citations and quotation marks omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child, but

our case law requires the evaluation of any such bond. **See In re E.M.**, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. **See In re K.K.R.-S**., 958 A.2d 529, 533 (Pa. Super. 2008).

We state our standard of review of a trial court's determination to change a child's goal as:

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.

**In re: N.C.**, 909 A.2d 818, 822-23 (Pa. Super. 2006) (citations and quotation marks omitted).

We have examined the opinion entered by the trial court on June 21, 2016 in light of the record in this matter and are satisfied that that opinion is a complete and correct analysis of this case.

Accordingly, we affirm the orders of the Court of Common Pleas of Cumberland County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(8) and (b), and changed the Children's goals to adoption, on the basis of the concise, thoughtful, and well-written opinion of the Honorable Edward E. Guido.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2017

IN RE:

ADOPTION OF
D.T., BORN 5/█/2004

ADOPTION OF
M.T., BORN 1/█/2006

ADOPTION OF
T.T., BORN 4/█/2009

ADOPTION OF
J.T., BORN 8/█/2013

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: NO. 22 ADOPTIONS 2016
: ORPHANS' COURT DIVISION
:
: NO. 23 ADOPTIONS 2016
: ORPHANS' COURT DIVISION
:
: NO. 24 ADOPTIONS 2016
: ORPHANS' COURT DIVISION
:
: NO. 25 ADOPTIONS 2016
: ORPHANS' COURT DIVISION
:

## IN RE: OPINION PURSUANT TO Pa. R.A.P. 1925

GUIDO, P.J., JUNE  *16* , 2016

Father, J.T., filed this appeal from our order of April, 20, 2016, which terminated his parental rights to the above children.[1] He alleges we erred in terminating his parental rights because 1) he will be able to provide the children with essential parental care, control, and subsistence in the very near future; 2) the conditions which led to the removal or placement of the children no longer existed or were substantially eliminated; and 3) the best interests of the children are not served by terminating his parental rights.[2]

## FACTUAL BACKGROUND

J.T. is the father of all the above children. They range in age from twelve to three years old. All the children were adjudicated dependent on December 11, 2014. They were initially removed from father on November 20, 2014 because he was unable to care for them.[3] There was no heat in the home and J.T. was overwhelmed and not able to continue caring for the children, even with the help of his mother.[4]

The boys, D.T. and T.T. have been in together in the same foster home since June 4, 2015. The girls, M.T. and J.T., have been together in a separate foster home since August 8, 2015.

---

[1] Mother voluntarily terminated her parental rights.
[2] Appellant's Concise Statement of Errors, May 19, 2016.
[3] Trial Tr., pp. 13-14. Mother had left the home as a result of abuse at the hands of J.T.
[4] Trial Tr., p. 14.

In the seventeen months since the children have been in placement, J.T. has made very little progress toward reunification. Cumberland County Children and Youth Services ("the Agency") requested that he participate in a psychological evaluation. Although he obtained an evaluation on May 12, 2015, he was evasive and defensive so no recommendations or diagnoses were able to be made.[5] He refused to obtain a re-evaluation.[6] In addition, he has failed to secure stable housing for the children. He was evicted from his home in April, 2015. He has since resided with his father, a Tier III Megan's Law offender.[7]

His visits with the children have been supervised since January 2015.[8] The visits have not gone well. The children have all expressed a reluctance to attend the visits.[9] On one occasion he brought his father to a visit, making the children uncomfortable.[10] He did not see any problem with this; nor does he see a problem with his father spending time with the children even though he is a registered sex offender.[11] In addition, the supervisors recorded twenty-six incidents of angry outbursts by father, sometimes resulting in the visitation having to be curtailed.[12] Nevertheless, father has refused to participate in an anger management program because he does not believe he has a problem.[13]

The daughters share their foster home with a number of pets, an older foster brother and loving foster parents who are willing to adopt them.[14] The youngest daughter calls them "mommy and daddy."[15]

---

[5] Trial Tr., p. 15.
[6] Trial Tr., p. 16.
[7] Trial Tr., p. 17.
[8] Trial Tr., p. 8.
[9] Trial Tr., p. 17.
[10] The oldest daughter was upset after J.T. brought his father to a visit. She said that paternal grandfather is "so inappropriate." Trial Tr., p. 41. J.T. does not believe that his daughter had an adverse reaction to seeing his father. Trial Tr., p. 59.
[11] J.T. believes that the children are safe around his father because, "as him being their grandparent . . . I'd say it's safe." Trial Tr., p. 59.
[12] Trial Tr., p. 5.
[13] Trial Tr., pp. 19, 51.
[14] Trial Tr., pp. 32-34.
[15] Trial Tr., p. 35.

The oldest daughter has openly stated that she loves her foster parents and would like them to adopt her.[16] She does not want continued contact with her father.[17]

The sons reside in their foster home with the foster parents and their two dogs.[18] The foster parents have gotten the boys involved in baseball.[19] They love the boys and would like to adopt them. The older son has expressed that he would like to be adopted.[20] The younger son is a little bit more confused about the situation.[21]

By the date we terminated father's parental rights, the children had been out of the care of their parents for seventeen months. The children struggle with the lack of permanency and are in need of a consistent, safe, and nurturing environment.[22]

## DISCUSSION

### Termination of Parental Rights

It is well established that a party seeking termination of parental rights bears the burden of establishing by "clear and convincing evidence" that the grounds exist. *Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994). "The standard of clear and convincing evidence means testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-04 (Pa. 1989).

The petition filed by the Agency sought involuntary termination of parental rights under several provisions of Section 2511(a) of the Adoption Act. The particular provisions of the Act relied upon by the Agency provide as follows:

---

[16] Trial Tr., p. 36.
[17] Trial Tr., p. 64.
[18] Trial Tr., p. 43. The foster father testified, "We have a yellow Lab and a black Lab. Almost immediately from coming into the house, the boys decided which one was theirs. T.T. and Duke have so similar a personality. They run and jump. Again, very similar. D.T. can get very serious and he likes to lay down and pet Daisy. It's almost like a perfect match." Trial Tr., pp. 43-44.
[19] Trial Tr., pp. 44.
[20] Trial Tr., p. 45.
[21] Trial Tr., p. 45.
[22] Trial Tr., p. 20.

3

a) General rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

 2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parents.

. . .

 5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services, or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time, and termination of the parental rights would best serve the needs and welfare of the child.

. . .

 8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa. C.S.A. §§ 2511(a)(2), (5) and (8). While the Agency asserted several grounds for termination, it only needed to demonstrate that grounds existed on any one of the above subsections for the petition to be granted. *In re: L.S.G.*, 767 A.2d 587 (Pa. Super. 2001).

## Grounds for Termination Under Section 2511(a)(8)

We were satisfied that the Agency had met its burden under all three sections. However, this opinion will focus upon the grounds set forth in subsection (a)(8). At the time we entered the order terminating father's parental rights, the children had been in placement continuously for seventeen months. During that time, father made very little progress toward reunification. While father did obtain psychological evaluation, it was not useful because he was evasive and defensive. When asked to obtain another evaluation, he refused.

4

Father consistently exhibited his inability to deal with the children.[23] During the course of his visits he displayed no less than twenty-six angry outbursts. On several occasions, his outbursts led to the visits being cut short. Nevertheless, father refused to believe that he needed help dealing with his anger issues. In fact he insisted that he does not have a problem with his anger.

Father still did not have adequate housing for the children at the time the petition to terminate his parental rights had been filed. He continued to live with his father who is a Tier III Megan's Law offender.[24] More importantly, he saw absolutely no need to protect his children from their predatory grandfather. On one occasion he brought his father to a supervised visit, even though it made the children uncomfortable. When confronted about his position regarding the children being safe with their grandfather, J.T. was adamant that grandfather "is not like that anymore."[25]

### Needs and Welfare of the Children[26]

All four children are in loving and stable foster homes. There is a mutual bond between all of the children and their respective families. Each family is willing and anxious to adopt the children. None of the children will suffer adverse effects by the termination of J.T.'s parental rights. As time went on, the children became more comfortable and bonded with their foster families. At the same time, the children

---

[23] "According to the last report, J.T.'s engagement, communication, ability to set limits, ability to respond to the children's needs, his ability to come prepared for the visits, and the children benefitting from the visits have all declined." Trial Tr., p. 17.

[24] Father was in line to obtain Section 8 housing, but was rejected because of his paramour's criminal record. In addition, father indicated at the hearing that he had secured housing with a friend who would accommodate the children. Trial Tr., pp. 17-18. However, even if the housing was available and appropriate, it was too late.

[25] Trial Tr., p. 63. The following exchange occurred between attorney for the Agency and J.T. on cross-examination:

> Ms. Baird: Okay let's talk about your father for just one second. You said that he would never hurt your kids?
> J.T.: No.
> Ms. Baird: Why do you say that?
> J.T.: Because he's not like that anymore.
> Ms. Baird: Well, he abused you, didn't he?
> J.T.: I can't - - I can't recall it.

Trial Tr., pp. 62-63.

[26] Our inquiry into the needs and welfare of the children applies equally to the analysis required under both §§ 2511(a)(8) and (b) of the Act.

5

became more reluctant to visit with their father. Those that are old enough to understand have expressed their desire be adopted by their respective foster families. All of the children are thriving in their foster homes. The termination of father's parental rights will enable the children to be adopted and give them the permanency they need and deserve.

June 16, 2016
DATE

Edward E. Guido, P.J.

Distribution:

Lindsay Baird, Esquire
Attorney for the Agency

Cindy Villanella, Esquire
Guardian Ad Litem

Marylou Matas, Esquire
Interim Guardian Ad Litem

John Mangan, Esquire
Attorney for Father

Damian DeStafano, Esquire
Attorney for Adoptive Parents

CCC&YS

CASA